IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TOMMY LEE KLEINER,

Petitioner,

v.                          CASE NO.  12-3007-SAC

STATE OF KANSAS,

Respondent.

## MEMORANDUM AND ORDER

This pro se petition for writ of habeas corpus was filed pursuant to 28 U.S.C. § 2254 by Mr. Kleiner while he was serving his state sentence.  Having considered petitioner's claims together with the state court record and relevant Supreme Court precedent, the court concludes that petitioner is not entitled to federal habeas corpus relief and denies the petition.

## I.  PROCEDURAL HISTORY & BACKGROUND FACTS

In November 2006, Mr. Kleiner was charged with aggravated battery and misdemeanor battery.  These offenses arose during a fight at a tavern where the victim Mr. Jones was struck in the face with a pool cue.  *Kleiner v. State*, 251 P.2d 112, 2011 WL 1877816, *1 (Kan.App. 2011).  Jones was hospitalized and required approximately 20 stitches.  Some witnesses identified Tommy Kleiner to police as the person who hit Mr. Jones.  Kleiner entered a plea

agreement in which he pled no contest to a reduced charge of aggravated battery in exchange for the State dismissing the misdemeanor battery.  As part of the factual basis for the plea, the State recounted that during an interview with a law enforcement officer regarding a subsequent "traffic matter," Mr. Kleiner made the statement that "he had knocked the shit out of" a man "with a pool cue" because the man had jumped his brother.  Transcript of Plea Hearing, Vol. 6, Mar. 6, 2007 (T.PLEA) at pgs. 9-10.  Petitioner was convicted upon his plea in the District Court of Osage County, Kansas and in September 2007, was sentenced to 36 months in prison and 24 months post-release supervision.[1]

Before sentencing, Mr. Kleiner filed a motion to withdraw his plea, which was denied.  He appealed the denial to the Kansas Court of Appeals (KCA), which affirmed.  His petition for review was denied by the Kansas Supreme Court (KSC).  *See State v. Kleiner*, 202 P.3d 108 (Kan.App. Mar. 6, 2009), *review denied* (Kan. Sept. 2, 2009).  This initial appeal is referred to as petitioner's "direct appeal".

Before his direct appeal was completed, Mr. Kleiner filed a pro se post-conviction motion pursuant to K.S.A. 60-1507, which was denied.  Kleiner appealed, and the KCA affirmed.  *Kleiner,* 251 P.3d at 112.  The KSC denied review on October 24, 2011.

---

[1]    Petitioner was released from prison not long after this federal action was filed.

## II.  CLAIMS

Petitioner delineates three grounds in his federal petition: (1) he was coerced into pleading nolo contendere and his attorney refused to take his case to trial; (2) he was denied a change of venue; and (3) his plea counsel was ineffective.  The supporting facts he alleges under these grounds and in an attached "letter" are not as organized.  Most of petitioner's supporting allegations for all three grounds relate to his "sister's murder case that shocked America" in which Lisa Montgomery was charged in Missouri with cutting a baby from its mother's womb.  He claims that the national attention focused on her case adversely impacted his unrelated, ongoing criminal proceedings.  He further alleges that his appointed defense counsel Bryan Hastert[2] said he would not take the case to trial because Kleiner would be found guilty by a jury due to his sister's case.  In addition, he alleges that he was "freaked out" because he was being questioned and his DNA was tested by FBI agents in connection with his sister's case and that she and her attorney told authorities that he was involved in that murder.  He also alleges that a particular FBI agent in his sister's case told him he would help him out.  Under his claim of coercion and in his attached letter, he alleges that he acted in his brother's defense.

---

[2]    Mr. Kleiner repeatedly refers to his counsel as "Brain Hastard"; however, the opinion of the KCA indicates that his attorney's name was Bryan Hastert.

III.  **LEGAL STANDARDS**

  A.  **Federal Habeas Corpus**

A federal court's review of a state criminal conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") codified at 28 U.S.C. § 2254(d).  AEDPA "erects a formidable barrier to federal habeas corpus relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, ___U.S.___, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013), and "requires federal courts to give significant deference to state court decisions on the merits."  *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013); see also *Hooks v. Workman*, 689 F.3d 1148, 1162-63 (10th Cir. 2012).  A federal habeas court does not sit as a super state appellate court.  See *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  This court's "primary task" is to determine whether the Kansas courts' decisions denying petitioner relief were "contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent." *Bonney v. Wilson*, ---F.3d---, 2014 WL 2619800 (10th Cir. June 13, 2014)(citing 28 U.S.C. § 2254(d)).[3]  The "question under AEDPA is not

_____

[3]    Section 2254(d) provides:

    (d) An application for a writ of habeas corpus on behalf of a person
    in custody pursuant to the judgment of a State court shall not be
    granted with respect to any claim that was adjudicated on the merits
    in State court proceedings unless the adjudication of the claim--

4

whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 S.Ct. at 16 (citing *Harrington v. Richter*, 131 S.Ct. 770, 786-787 (2011)). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Titlow*, 134 S.Ct. at 16 (quoting *Richter*, 131 S.Ct. at 786); see *Frost v. Pryor*, 749 F.3d 1212 (10th Cir. 2014).

### B. Procedural Default

Respondent asserts in his Answer and Return (Doc. 9) that petitioner has defaulted his first two grounds. It is well-settled that a state prisoner must satisfy the exhaustion prerequisite in 28 U.S.C. § 2254(b)(1) before filing a federal habeas corpus application, which means that each of his federal claims must have been presented to the highest state court by way of either direct appeal or state post-conviction proceedings. When a habeas

---

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

applicant failed to properly exhaust a claim in state court and those remedies are no longer available at the time the federal habeas application is filed, the applicant meets the technical requirements for exhaustion.   See *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); see *Anderson v. Sirmons*, 476 F.3d 1131, 1139-40 n. 7 (10th Cir. 2007).   However, that claim is then subject to dismissal under the doctrine of procedural default.   Under this doctrine, review by a federal habeas court of claims that were procedurally defaulted in state court is barred, unless the applicant can demonstrate either cause and prejudice for the default or that a fundamental miscarriage of justice would result if his claim is not considered.   *Coleman*, 501 U.S. at 724, 750; *Walker v. Martin*, 131 S.Ct. 1120, 1127 (2011); *Fairchild v. Workman*, 579 F.3d 1134, 1141 (10th Cir. 2009)(internal quotation marks omitted); see *Thacker v. Workman*, 678 F.3d 820, 835 (10th Cir. 2012), *cert. denied*, 133 S.Ct. 878 (2013)(When "a particular claim was defaulted in state court" federal courts "recognize the state courts' procedural bar ruling and do not address the claim on the merits unless cause and prejudice or a fundamental miscarriage of justice is shown.").

The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).   Examples of such external factors include the discovery of new evidence, a change in the law, and interference by

state officials. *Id.* As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). A "fundamental miscarriage of justice" requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

**C.  Ineffective Assistance of Counsel**

Under AEDPA, a state prisoner is not entitled to federal habeas corpus relief on a claim of ineffective assistance of counsel unless he establishes that the state court's adjudication of this claim was an unreasonable application of Supreme Court precedent. The Supreme Court precedent governing such claims is *Strickland v. Washington*, 466 U.S. 668 (1984). In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court applied *Strickland* in the guilty plea context, holding that a defendant challenging the effective assistance of counsel during the plea process must show that counsel's performance was deficient and that such deficient performance prejudiced him. *Id.* at 57–58. The Court in *Lockhart* explained that,

> [I]n the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence. . . .

*Id.*; *O'Neill v. Bruce*, 2006 WL 3087127, at *5 (D.Kan. Oct. 27, 2006)(quoting *Lockhart*, 474 U.S. at 59); *Gardner v. McKune*, 242 Fed.Appx. 594 (10th Cir. 2007)(applying the same standard in the

7

context of a no contest plea).  The Tenth Circuit recently summarized

the relevant law governing analysis under *Strickland's* first prong:

> "[O]ur review of counsel's performance under the first
> prong of *Strickland* is a 'highly deferential' one." *Id.*
> [*Byrd v. Workman*, 645.3d 1159] at 1168 [(10th Cir. 2011)]
> (quoting *Hooks*, 606 F.3d at 723). . . . "[C]ounsel is
> strongly presumed to have rendered adequate assistance and
> made all significant decisions in the exercise of
> reasonable professional judgment." *Byrd*, 645 F.3d at
> 1168 (alteration omitted) (quoting *Dever*, 36 F.3d at
> 1537)(internal quotation marks omitted).  Surmounting
> this "high bar" is not an "easy task." *Richter*, 131 S.Ct.
> at 788 (quoting *Padilla v. Kentucky*, --- U.S. -- --, 130
> S.Ct. 1473, 1485 (2010))(internal quotation marks
> omitted); see *Fox*, 200 F.3d at 1295 ("[Petitioner] bears
> a heavy burden in that he must overcome the presumption
> that his counsel's actions were sound trial strategy . .
> . .").
>
> A state prisoner in the § 2254 context faces an even greater
> challenge.  *Byrd*, 645 F.3d at 1168.  "[W]hen assessing a
> state prisoner's ineffective-assistance-of-counsel
> claims on habeas review, '[w]e defer to the state court's
> determination that counsel's performance was not
> deficient and, further, defer to the attorney's decision
> in how to best represent a client.'" *Id.* (second
> alteration in original)(quoting *Crawley v. Dinwiddie*, 584
> F.3d 916, 922 (10th Cir. 2009)).  As the Supreme Court has
> explained, "because the *Strickland* standard is a general
> standard, a state court has even more latitude to
> reasonably determine that a defendant has not satisfied
> that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123,
> 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009).  Thus, our review
> of ineffective-assistance claims in habeas applications
> under § 2254 is "doubly deferential." *Id.*  "[T]he
> question is not whether counsel's actions were reasonable.
> The question is whether there is any reasonable argument
> that counsel satisfied *Strickland's* deferential
> standard." *Richter*, 131 S.Ct. at 788.

*Hooks*, 689 F.3d at 1186-87.

## IV. DISCUSSION

### A.  Venue Claim

In support of this claim, petitioner alleges that the challenged criminal proceedings took place in a small community where everyone knew everybody; he wanted a change of venue due to his sister's case; and he went up against three persons with the same last name: District Attorney Brandon L. Jones, Magistrate Judge Stephen Jones and the victim Josh Jones.  Petitioner generally indicated in his federal petition that he had exhausted state court remedies on all his claims, but he failed to answer the exhaustion questions for this particular claim.

To determine the procedural default issues in this case, the court reviewed the state court records including the motions filed by Mr. Kleiner, the briefs filed by both parties, and the transcripts of hearings on petitioner's claims as well as the written opinions of the KCA.  The arguments presented by petitioner on direct appeal were summarized by the KCA in its written opinion as follows:

> (1) the prosecutor provided an inadequate factual basis to support the plea; (2) neither his attorney nor the court explained the difference between the various security levels of aggravated battery that could apply to his case, (3) neither his attorney nor the court sufficiently explained the possibility that he might not be eligible for the Labette Correctional Conservation Camp; and (4) no one gave him a "plea advisory" form that explained his plea and its consequences in writing.

*State v.* Kleiner, 202 P.3d at *1.  The arguments presented to the KCA on collateral appeal were set forth in the Brief of Appellant, *Kleiner v. State*, Case No. 10-103828 (KCA July 2, 2010), where

petitioner generally claimed that attorney Hastert was ineffective during plea proceedings.  In support, he alleged that Hastert "told him he would lose at trial" and did not want him to go to trial.  *Id.* at 2.  He further alleged that Hastert failed to inform him "that it was his absolute right to decide whether or not to go to trial," and that Kleiner "did not know that it was his decision to make." *Id.* at 4.  The KCA characterized Kleiner's claim raised on collateral appeal as that Hastert "was ineffective for failing to inform him of his right to decide whether he wanted his case tried by a jury." *Kleiner*, 251 P.3d at *1.

The state court records plainly show that Mr. Kleiner did not litigate a venue claim during either of his state appeals.  Were petitioner to return to state court and attempt to raise this defaulted claim, it would be denied as procedurally barred under independent state law that is uniformly applied.  See e.g., *Amos v. Roberts*, 189 Fed.Appx. 830, 834 (10th Cir. 2006)(finding claim is procedurally defaulted and that "motion for postconviction relief is now time-barred in state court," and citing K.S.A. § 60-1507(f)(1) imposing a one-year limitation period which runs from the termination of direct appellate review.).  Despite respondent expressly raising procedural default in his Answer and Return, Mr. Kleiner has failed to offer any cause, prejudice, or reason why a fundamental miscarriage of justice would occur if this court does not consider his claim.  This court's independent review has revealed no grounds

for cause or prejudice in the record.  Nor does the record contain any evidence that a fundamental miscarriage of justice will result if petitioner's venue claims are not reviewed.  The court concludes that federal habeas corpus review of this claim is barred by the doctrine of procedural default.

Even if this claim were not procedurally defaulted, it warrants no relief.  Petitioner utterly fails to allege facts showing that his case was prejudiced by either Lisa Montgomery's pending case or participants in the proceedings having the same very common last name.

**B.   Claim that Plea was Coerced**

In support of petitioner's claim in ground (1), he alleges that he was coerced into accepting the plea offer because attorney Hastert said he would not take his case to trial and that petitioner would be found guilty due to his sister's case.  The record supports respondent's assertion of procedural default with respect to petitioner's legal claim that he was "coerced" by Hastert into entering his no-contest plea.  This claim was not raised in the state courts and is now defaulted.  Petitioner has not presented and the record does not reveal a basis for finding cause or prejudice for this default.  The record is also devoid of evidence that a fundamental miscarriage of justice will result absent review of this claim.  The court concludes that federal habeas corpus review of this claim is barred by the doctrine of procedural default.

Even if petitioner's claim that he was coerced by counsel into entering his no-contest plea were not procedurally defaulted, it would be rejected based on the record.  During the plea hearing the court advised Mr. Kleiner, "It's important that I understand nobody's threatened or coerced you into this decision," and directly asked, "Can you tell me this is what you decided to do, nobody's threatened you or coerced you?"  T.PLEA at 7.  Petitioner answered, "Well, I'm deciding it on my own but, I mean, I did decide this on my own or whatever, what we talked about;" and "I mean, I was going to do this anyways," and "I want to go to Labette and all that."  *Id*. Petitioner's attorney next apprised the court of some outside threats but explained that Kleiner's:

> decision to take this plea today is not really based upon those threats, it's based upon the discussion that him and I have had about what the law is, what the facts of this case are, and what his specific situation is and so that's why he wants to go through with the plea bargain that's been offered him.

*Id.* The court asked petitioner whether he "concur(red) in what your attorney said there," and Mr. Klenier responded, "That is correct." *Id*. at 8.  The court continued, "And even though maybe somebody's made some threats or something on the side, that you've discussed this and decided this is what you wanted to do?"  Again, petitioner responded, "That is correct."  *Id.*  The court also asked, "And those outside threats or comments, whatever they are, they're not making you make this decision here today?"  Petitioner responded, "That's

correct." *Id.* The court inquired whether petitioner was "satisfied with your attorney Mr. Hastert in this matter," and petitioner answered, "Yeah, yes, I am." *Id.* at 10. Although a petitioner's statements made at his plea hearing "are subject to challenge under appropriate circumstances," they constitute "a formidable barrier in any subsequent collateral proceeding." See *United States v. Maranzino*, 860 F.2d 981, 985 (10th Cir. 1988)(quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); see also *Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995). "The plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom." See *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)(citing *United States v. Woosley*, 440 F.2d 1280, 1281 (8th Cir.), *cert. denied*, 404 U.S. 864 (1971)). The state court generally found in applying its own review standards that Mr. Kleiner was not coerced by Hastert. This finding is entitled to deference.[4]

### C.  Claim that Acted in Defense of Brother

Petitioner alleged in his federal petition purportedly as additional supporting facts for ground (1) and in his attached "letter" that the victim and others at the bar were swinging pool cues, that the victim broke his brother's nose, and that he acted

---

[4]     In reviewing factual findings of the state court, the federal court is generally limited to consideration of the record that was before the state appellate court. *Cullen v. Pinholster*, ___U.S.___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).

in defense of his brother.  He did not suggest how these facts support a claim of coercion by counsel,[5] and the court has already found that his coercion claim was defaulted.  However, the record shows, contrary to respondent's general assertion, that petitioner's allegations regarding this defense were not procedurally defaulted. Instead, they were presented by Mr. Kleiner in his 60-1507 proceedings and were considered by the state courts in connection with his claim that his plea was not knowing and voluntary.  Because petitioner exhausted and the state court considered these allegations, this court examines the state court's findings under AEDPA's deferential standard.

The record shows the following relevant facts.  Prior to sentencing, Mr. Kleiner indicated his intent to file a motion to set aside his plea, Hastert was allowed to withdraw as counsel, and the court appointed new counsel, Mr. Lowry.  Lowry filed a Memorandum in Support of Defendant's Motion to Withdraw Plea claiming that defendant Kleiner was "not guilty of the offense to which he pled

---

[5]      If these allegations were proffered as an assertion of actual innocence to overcome procedural default, they fail in that regard.  To meet the actual innocence test, a criminal defendant must make a colorable showing of factual innocence.  *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000)(citing *Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *Sawyer v. Whitley*, 505 U.S. 333, 339-41 (1992); see also *Schlup v. Delo*, 513 U.S. 298 (1995).  Under *Schlup*, the showing of innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error. . . ."  *Id.* at 316.  "The exception is intended for those rare situations 'where the State has convicted the wrong person of the crime. . . [or where] it is evident that the law has made a mistake.'"  *Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995)(citation omitted).  Petitioner does not allege in his federal petition that he is actually innocent of striking the victim with a pool cue or that his act did not result in serious injury to the victim. His allegations of having a legal defense do not demonstrate factual innocence.

No Contest" and "did not understand the charge or the effect of the plea." *State v. Kleiner*, Case No. 06 CR 268 (Doc. 51).  The court conducted a hearing on this motion at which Kleiner appeared with counsel.  Transcript of Motion to Withdraw Plea, Rec. Vol. 10, July 30, 2007, at p. 5.  Lowry argued that Kleiner did not understand the difference between recklessness and intentional conduct or "what defenses were available to him," *id.*; that there was "plenty of evidence in the police reports that the various witnesses saw various things" and that "if Tommy Kleiner was swinging a pool cue" that evening, "there is plenty of indication that he was doing so in defense of another." *Id.* at 4.  The court reviewed the transcript of the plea hearing and found that "great length was taken" to clearly set out the amended charge and for the defendant to "understand reckless" and that there was no mistreatment or "anything . . . unfair about it." *Id.* at 15.  At the close of the hearing the court held that petitioner had not shown "good cause" to set aside his plea, that he was represented by competent counsel, and that counsel had not misled him.  *Id.*  The court reasoned that it "was not required to explain to the defendant the ramifications" of "the difference between intentional and reckless conduct as regard to his use of some defense." *Id.* at 16.

Kleiner appealed the denial, and attorney Wells was appointed to represent him.  In the Brief of Appellant, Wells argued that "the

factual basis for the Defendant's plea was inadequate at best,"[6] its weaknesses were "not explored by Court or Counsel on the record," and that "the tepid factual basis raise(d) questions whether the Defendant really understood the plea" as well as "exposed possible defenses that should have been explored by the Court."  It was also generally argued that plea counsel "failed to adequately and thoroughly explain the consequences of his plea" to Mr. Kleiner and that the court should have been concerned with whether or not Kleiner's plea was "freely, fairly, and understandably made."

On this direct appeal, the KCA generally characterized Kleiner's claim as "that his attorney and the court failed to explain important aspects of the charge or consequences of his plea before he entered it."  *Kleiner v. State*, 202 P.3d 108 at *1.  The KCA found:

> After the State orally amended the charge to reckless aggravated battery, Kleiner said he wanted to plead no contest to that charge.  In addition, Kleiner's attorney agreed to the State's factual basis, and Kleiner said that his mind was clear, that he understood the potential penalties, and that he understood the rights he was giving up.
>
> Nothing more was required at the hearing to further explain the charge to Kleiner.  The district court is not required to explain the elements of the crime to the defendant.  Rather, the court may rely upon the defense attorney to do so, and the court may generally presume that the defense

---

[6]    Petitioner makes no reference in his federal petition to his claim in state court that the factual basis for his plea was inadequate.  If he had, no merit would be found.  This claim, by itself, does not "present a basis to invalidate (a) plea in a federal habeas corpus action.  *Green v. Koerner*, 312 Fed.Appx. 105, 108 (10th Cir. 2009).  "Only when a defendant proclaims his innocence while pleading guilty have federal courts required a judicial finding of some factual basis for the plea as an essential part of the constitutionally required finding that the plea was voluntary."  *Id.* at 109 (citing *North Carolina v. Alford*, 400 U.S. 25, 38 n. 10 (1970); accord *Perkis v. Sirmons*, 201 Fed.Appx. 648, 651 (10th Cir. 2006)).

> counsel will routinely explain the nature of the offense
> in appropriate detail.

*Id.* at *2 *3.  They also found that "Kleiner was represented by

counsel, wasn't misled or coerced," had "not shown that he was given

any inaccurate information," and "entered the plea with a reasonable

understanding of the charge and the consequences of the plea."  *Id.*

at *4.  The KCA concluded that Kleiner's plea hearing met the

standards set by Kansas law:

> The standards that the district court must consider are
> (1) whether the defendant was represented by counsel, (2)
> whether the defendant was misled, coerced, mistreated, or
> unfairly taken advantage of, and (3) whether the plea was
> fairly and understandably made.

*Id*. at *1.   They also noted that the trial court adhered to the

plea agreement, and "Kleiner benefited from amending the charge to

a less serious level of aggravated battery."  *Id*. at *2.  The state

courts thus considered and rejected this claim on the merits.

Under "Federal law" a guilty plea is not constitutionally valid

unless it was entered intelligently and voluntarily and the record

demonstrates that the defendant knew the constitutional rights he

was waiving by pleading guilty.  *Boykin v. Alabama*, 395 U.S. 238,

242-44 (1969).  "The longstanding test for determining the validity

of a guilty plea is 'whether the plea represents a voluntary and

intelligent choice among the alternative courses of action open to

the defendant.'"  *Lockhart*, 474 U.S. at 56 (quoting *Alford*, 400 U.S.

at 31).  "[W]hen the judgment of conviction upon a guilty plea has

become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."  See *Green*, 312 Fed.Appx. at 109, n. 1; *U.S. v. DeVaughn*, 694 F.3d 1141, 1152 (10th Cir. 2012)(All the Supreme Court's guilty plea cases "recognize the general rule that 'a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'")(citation omitted).

The threshold inquiry is whether petitioner is entitled to relief on this claim based upon "clearly established" Supreme Court precedent.  Petitioner makes no suggestion that the state court contradicted or misapplied Supreme Court precedent.  In fact, he makes no reference to any Federal law, and none was made in his arguments before the state courts.  Nor has this court located any such precedent entitling petitioner to relief.  Given the absence of any indication that controlling Supreme Court precedent was at issue, this "federal court need not assess whether (the) state court's decision was 'contrary to' or involved an 'unreasonable application of such law."  *House v. Hatch*, 527 F.3d 1010, 1017 (10TH Cir. 2008).

Even if this court were required to make the § 2254(d) assessment, it would find no right to relief.  Petitioner's allegations that he had a defense to the amended charge to which he pled no-contest, standing alone, do not entitle him to federal habeas

18

corpus relief and could be dismissed on this basis alone.  The implications, if any, that he did not knowingly or intentionally relinquish this potential defense or that this defense was so compelling he should have gone to trial entitle him to no relief. "A guilty plea 'foreclose[s] direct inquiry into the merits' of most pre-plea defenses, whether the defendant waived them intentionally or not." *DeVaughn*, 694 F.3d at 1153 n. 7 (citing *Tollette v. Henderson*, 411 U.S. 258, 266 (1973)).  The Supreme Court has held that "conscious waiver" is not "necessary with respect to each potential defense relinquished by a plea of guilty." *United States v. Broce*, 488 U.S. 563, 573 (1989).  "Relinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty." *Id.* at 573-74.

Moreover, petitioner simply alleges no facts regarding this potential defense to suggest that his entering a plea was either involuntary or unknowing.  He does not claim that he was misinformed by counsel as to the charges or the rights being forfeited, and the state courts expressly found that he was not.  He has not claimed that Hastert concealed this defense from him.  Cf., *Levin v. Romero*, 485 Fed.Appx. 301, 304 (10th Cir. 2012).  Nor has he described what evidence he had to support this defense[7] or offered any new evidence

---

[7]     In determining Kleiner's claim that the factual basis for the plea was inadequate, the KCA held that "[b]ecause Kleiner pled no contest to a severity level 5 aggravated battery, the district court had to find that Kleiner had

of his innocence.

In any event, the transcript of the plea proceeding plainly shows that Mr. Kleiner was aware before he entered his no-contest plea that he was giving up his right to present a defense.  At the hearing, the judge inquired and petitioner affirmed his understanding that he was giving up his rights to a jury trial, to have the State prove guilt beyond a reasonable doubt, and to present a defense.  T.PLEA at 6.  In sum, petitioner has not demonstrated that the KCA's decision that his plea was knowing and voluntary "was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court" or "was based on an unreasonable determination of the facts."  *Fields v. Gibson*, 277 F.3d 1203, 1215 (10th Cir. 2002)(citing 28 USC 2254(d)).

Petitioner did not assert a claim of ineffective assistance of counsel based on his allegations on direct appeal that he acted in defense of his brother.[8]  When he did assert ineffective assistance of counsel on collateral appeal, these allegations were not alleged in support.

### D.  Ineffective Assistance of Counsel Claim

The Supreme Court has held that:

---

recklessly caused another person great bodily harm or disfigurement."  *State v. Kleiner*, 202 P.3d 108, at *1.

[8]     Petitioner implies that his counsel should have pursued the defense that he was acting in defense of another.  Yet, he utterly fails to explain why his attorney should have argued that he had this defense at the plea proceeding if it would have undermined the plea agreement.  See *Levin*, 485 Fed.Appx. at 304.

> [A] counseled plea of guilty is an admission of factual
> guilt so reliable that, where voluntary and intelligent,
> it quite validly removes the issue of factual guilt from
> the case.  In most cases, factual guilt is a sufficient
> basis for the State's imposition of punishment.  A guilty
> plea, therefore, simply renders irrelevant those
> constitutional violations not logically inconsistent with
> the valid establishment of factual guilt and which do not
> stand in the way of conviction if factual guilt is validly
> established.

See *Menna v. New York*, 423 U.S. 61, 63 n. 2 (1975).  Where, as here,

a petitioner had counsel during the plea process and entered the plea

on counsel's advice, "the voluntariness of the plea depends on

whether counsel's advice was 'within the range of competence demanded

of attorneys in criminal cases.'"  *Gardner v. McKune*, 2007 WL 852645,

*4 (D.Kan.  Mar. 21, 2007)(quoting *McMann v. Richardson*, 397 U.S.

759, 771 (1970); citing *Lockhart*, 474 U.S. at 56-57).

As the supporting facts for his ineffective assistance of

counsel claim, petitioner alleges that counsel Hastert would not take

his case to trial or "fight" due to his sister's murder case,[9] coerced

him into taking the plea by "scaring (him) with prison time -in the

H-Box presumptive probation box," and that he was ready for trial.

In his attached letter, petitioner also alleges that Hastert told

him "a jury would find him guilty because of the small town National

---

[9]     Other allegations in his federal petition about the Montgomery case were
not presented in either of Mr. Kleiner's appeals and are defaulted as a result,
including that petitioner's sister and her attorney "told them" he was involved
in her crime; that he was "really freaked out" and had to meet with FBI agents;
that he was offered help if necessary by FBI agents involved in his sister's case;
and that he has been charged in other unrelated cases.  Nor do they appear to evince
a federal constitutional violation.

news" about his sister's case; that he asked Hastert to "withdraw from counsel" and/or withdraw plea, but Hastert never did; and that he wanted to go to trial and Lowry was willing, but his motion to withdraw was denied.

Petitioner's allegations that Hastert scared him with prison time and was asked but refused to either withdraw as counsel or seek a plea withdrawal were not exhausted in state court and are procedurally defaulted as a result.  Petitioner's vague allegation concerning "H-box" is likewise defaulted.  Petitioner's allegations that he wanted to go to trial, that Lowry was willing, and that his motion to withdraw was denied do not show any sort of attorney incompetence on Hastert's part.

As for petitioner's allegations of attorney incompetence that were exhausted, the record shows the following relevant facts.  The state court appointed new counsel Mr. Campbell to represent petitioner in his 60-1507 proceedings.  At a pre-hearing, the trial judge stated that the claims in the motion appeared to be that Hastert was ineffective in that he failed to explain the consequences of the plea and the nature of the charges rendering Kleiner was unable to make a knowing and conscious decision[10] and that Hastert would not

---

[10]    Nowhere in his federal petition does petitioner allege that Hastert failed to explain the consequences of the plea and the nature of the charges so that he was unable to make a knowing and conscious decision or that he was using illegal substances at the time of his plea, which are allegations that he made in support of this claim during state collateral proceedings.  These allegations are therefore not before this court, and the state courts' discussions of them are not included.

allow him to go to trial due to his sister's murder case.   Transcript of Hearing, Vol. 2, November 17, 2009, at p. 3.   Concerned that new allegations were being made, the judge scheduled an evidentiary hearing.   Counsel introduced petitioner's case as alleging that Kleiner's rights were violated in that "he was not allowed to proceed to trial."

Kleiner and Hastert testified at this hearing.   Kleiner testified as follows.   He wanted to go to trial because he didn't "really believe that" he was "really at fault," he "got involved" because his brother was attacked "out of the blue," and Hastert advised him that he would lose due to his sister's pending case. Transcript 60-1507 Hearing, Vol. 3, Dec. 7, 2009 (T.1507) at pgs. 10-12.   Hastert "did not want (him) to go to trial" and told him a trial would not be successful because of his sister's case and that his sister's case would impact his case.   *Id.* at 11.   He didn't believe "that he could have gotten a fair trial with her case going on."   *Id.* at 12.   He didn't "feel like (he) had good representation at all."   He tried to set aside his plea as soon as he obtained new counsel.   *Id.* at 14.   When asked if he was told that going to trial "was your decision to make and only yours," he responded:   "I really don"t—I can't recall that, I don't."   *Id.* at 10.

Bryan Hastert was called by the State and testified as to his qualifications including his having served as a county prosecutor, practiced as a criminal defense attorney, and served on defense

panels over the past twenty years.  *Id.* at 24.  Hastert further testified as follows.  He obtained and read the police reports and investigated the scene with Kleiner.  He met with Kleiner to discuss the case and the reports, which indicated that some witnesses identified Kleiner as hitting the victim with the pool cue.  *Id.* at 28-29.  He read through the reports with Kleiner and pointed out the opposing side's view of the fight.  *Id.* at 40.  Initially Kleiner was "pretty adamant about going to trial."  *Id.* at 41.  Kleiner's position was that he jumped in to defend his brother, but all potential witnesses on Kleiner's side were family.  *Id.* at 29. Hastert went to the prosecutor for a plea offer, presented the offer and other options to Kleiner, and they "debated back and forth about the merits of the offer."  He advised Kleiner that "he should be concerned about how much harm was done to this kid when he got hit with the pool cue . . . and that all the witnesses from the other side were going to claim that he had approached him from behind and hit him from behind. . . ."  *Id.* at 35.  Finally, Hastert testified:

> My concerns in this case were that the victim . . . ended up in the hospital . . . for a couple weeks and had spinal fluid coming out of his skull . . . .  There was definitely great bodily harm where death could be inflicted . . .  I reviewed the reports and talked to Tommy about it.  I mean ultimately going to trial was his choice . . .

*Id.* at 30.  Eventually Kleiner said that he wanted to try to go to Labette.  *Id.* at 32, 34.

With regard to Montgomery's case, Hastert testified as follows.

Kleiner brought up his sister's case before Hastert was aware that Lisa Montgomery was his sister, and he told Kleiner that he "didn't know why he was even concerned about it." *Id.* at 33. He did not tell Kleiner that he would be unable to get a fair trial in Osage County because of his sister's case. He was not sure anyone would have made a connection due to their different last names, and the matter most likely would not have been brought up. *Id.* He had never told a client that he would not take his case to trial. *Id.* at 32. He specifically denied telling Mr. Kleiner that he had to take the plea offer or "that he would not take his case to trial." *Id.* at 35. He responded negatively when directly asked if the sister's case was a factor in the plea discussions. *Id.* at 34. He testified that he did not force Kleiner into a position and did not threaten to withdraw if he didn't take the offer. *Id.* He further testified that

> whether or not to take a plea, as far as whether or not to go to trial, it's my client's ultimate decision . . . . . . . it's always their decision. Even if I don't want to go to trial, they decide. . . . They always have to make the decision.

*Id.* at 31-32.

The judge questioned Hastert about Kleiner's testimony that he only remembered their meeting once or twice, while noting that the case file reflected Hastert's appearance in court with Kleiner at least six times. *Id.* at 38. Hastert responded: "I think I met with him twice before he ever got incarcerated on the bond in this case" plus "[w]e had multiple Court appearances" and "we stood out in the

hallway each and every one of those times and talked about the case."
*Id.*

Kleiner's counsel argued that a criminal defendant has an "absolute right to make a determination of whether or not he should be allowed to proceed to trial" and that Kleiner "certainly expressed and was adamant in his desire to go to trial" but was "talked out of it by Mr. Hastert." *Id.* at 44.  The State countered that Hastert was a highly experienced criminal defense attorney who was not afraid to go to trial.  *Id.* at 46.  The State also recounted petitioner's contrary statements during the plea colloquy.

The judge recited the correct standard for a claim of ineffective assistance of counsel.  He reiterated that petitioner had claimed in his motion and at the hearing that his attorney was ineffective "because he wouldn't take his case to trial," had not met with him on enough occasions, and had talked him out of going to trial.  *Id.* at 49-50.  The judge found that the evidence was contrary to petitioner's claims.  *Id.*  He reasoned that the transcript of the plea proceeding indicated that Mr. Kleiner was advised of his rights and supported the judge's perception that Hastert's representation during that proceeding was not ineffective. *Id.*  The judge credited Hastert's testimony that he met with Kleiner and discussed his case several times and as to his process in advising clients in general and Mr. Kleiner in particular.  *Id.* at 50.  The court concluded that there was "no evidence" that Hastert's

"performance fell below a reasonable standard," that "Mr. Kleiner made the decision to enter the plea" and "it was voluntary and knowledgeable on his part."[11]   The court also found that Mr. Kleiner had hoped to enter the Labette program but psychotropic medication he was taking disqualified him and he wanted to withdraw his plea and go to trial rather than serve a prison sentence.   *Id.* at 51.   The motion was denied at the hearing.

A notice of appeal was filed, and petitioner's fifth attorney Mr. Folsom was appointed to represent him on collateral appeal.   The KCA summarized relevant evidence presented at the 60-1507 hearing as follows:

> Although Kleiner could not recall if Hastert specifically advised him that it was his decision whether to go to trial, he maintained Hastert never informed him of his constitutional rights.   Further, Kleiner indicated that he had told Hastert he wanted to go to trial but Hastert suggested pleading because of the potential negative publicity of a Missouri capital murder case involving Kleiner's sister and the affect that negative publicity could have on Kleiner's ability to receive a fair trial.

*Kleiner,* 251 P.3d 112 at *1.   The KCA then discussed Hastert's contrary testimony including that he did not "assert that Kleiner could not receive a fair trial due to the murder trial involving Kleiner's sister."   *Id.* at *1-*2.   After noting that the district court had found Hastert's testimony more credible, the KCA refused to "reweigh the evidence" or "pass on the credibility of witnesses."

---

[11]   The court commented that "I don't know whether he made it clear to the Court here today" that Hastert said "that he would be found guilty because of his sister's pending capital murder case."   *Id.* at 49.

*Id.*  The KCA found that "substantial competent evidence supports the district court's factual findings that Hastert informed Kleiner of his right to a jury trial" and that "the facts support the district court's conclusion of law that Hastert's performance was not deficient and did not prejudice Kleiner's constitutional rights." *Id.*  The KCA also found that even if Hastert failed to inform Kleiner of his constitutional right to a jury trial, Kleiner failed to establish prejudice because at the plea hearing the judge "explicitly informed Kleiner of his right to a jury trial and Kleiner waived that right."  *Id.*

The state court also expressly rejected Kleiner's more specific claim that he was not informed that it was his right to decide whether or not to go to trial.  In doing so, the KCA compared Kleiner's testimony with Hastert's:

> Conversely, Hastert testified that he met with Kleiner multiple times to discuss the facts, the victim's injuries, possible defenses, witnesses' statements, and the police reports of the incident.  Hastert claimed he received an offer from the State and presented it to Kleiner.  Hastert maintained that it was Kleiner's decision whether to accept the plea and claimed that he and Kleiner debated the merits of the offer, but ultimately Kleiner "said that he wanted to try to go to Labette." Additionally, Hastert noted he did not force Kleiner into that decision, threaten to withdraw if Kleiner did not take the offer, or assert that Kleiner could not receive a fair trial due to the murder trial involving Kleiner's sister.
>
> The district court rejected Kleiner's argument and denied the motion, stating Kleiner's plea hearing transcript indicated that the judge clearly advised him of his constitutional rights before he pled.  Additionally, the district court held that Kleiner presented no evidence

28

that Hastert's performance was deficient or that it prejudiced his substantial rights.

*Id.* at *2.

Because the KCA addressed the merits of petitioner's arguments in its 2011 Memorandum Opinion, this federal court's review is confined to whether the state appellate court unreasonably applied *Strickland* or whether its factual determination was unreasonable in light of the evidence presented.  The KCA properly set forth the *Strickland* standards, even though it cited only a state court opinion, *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007).[12] The state court's factual determinations are presumed to be correct, and this court will defer to the state court's assessments of witness credibility if supported by the record.  *Marshall v. Lonberger*, 459 U.S. 422, 431–34 (1983); 28 U.S.C. § 2254(d).  Furthermore, as noted, this court's review of the state court's finding of no evidence that counsel's performance was deficient must be "doubly deferential." *Fields*, 277 F.3d at 1215.

Petitioner points to nothing in the record to support his claim of deficient performance.  His testimony at the 60-1507 hearing and his allegations regarding counsel's conduct in his petition are vague and conclusory.  They are clearly not sufficient to overcome the presumption under *Strickland* that counsel's representation did not fall below "an objective standard of reasonableness."  *Strickland*,

---

[12]    The court in *Bledsoe* in turn cited *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) as "adopting standards of *Strickland*."  *Bledsoe*, 283 Kan. at 90.

466 U.S. at 687–88; *McMann*, 397 U.S. at 770–71 (petitioner must show "that the advice he received from counsel" was not "within the range of competence demanded of attorneys in criminal cases.). Furthermore, petitioner has not alleged facts to overcome his own contrary assertions in open court during the plea colloquy of satisfaction with his counsel and lack of coercion.

Likewise, petitioner has not "overcome the presumption that, under the circumstances," Hastert encouraging him to plead no contest "'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689; *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008), *cert. denied*, 556 U.S. 1136 (2009)(Petitioner is required to prove "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."). Courts are instructed to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel's conduct was not the result of error or omission but was derived from trial strategy. *Strickland*, 466 U.S. at 689*.* Hastert's testimony indicated his professional judgment that the strength of the case against petitioner warranted his serious consideration of the plea agreement. The record indicates that counsel's judgment was reasonable in that it contains inculpatory evidence in the form of witness statements and the reference to petitioner's own inculpatory remark, while the only suggestion of exculpatory evidence was

petitioner's self-serving account and speculation regarding testimony by his family.

Moreover, even if evidence showed that Hastert advised petitioner to accept the plea despite his initial strong desire to go to trial, no claim is stated.  Strongly urging a defendant to enter a plea because an attorney believes it is in the defendant's best interest is neither unconstitutional coercion nor ineffective assistance.  *Fields*, 277 F.3d at 1216; *Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir. 1995)("'Advice—even strong urging' by counsel does not invalidate a guilty plea.")(citing *Williams v. Chrans*, 945 F.2d 926, 933 (7th Cir. 1991)(quoting *Lunz v. Henderson*, 533 F.2d 1322, 1327 (2d Cir. 1976)).  "Indeed, one central component of a lawyer's job is to assimilate and synthesize information from numerous sources and then advise clients about what is perceived to be in their best interests."  *Fields*, 277 F.3d at 1214.  Hastert's testimony shows that he did precisely what lawyers are required to do - he drew conclusions from the evidence and recommended what he thought was in his client's best interest.  *Fields*, 277 F.3d at 1216.

The court concludes that the state district court and the KCA in this case explicitly considered the federal constitutional question of ineffective assistance of counsel raised by petitioner. The KCA correctly applied the performance and prejudice prongs of *Strickland*, and their legal analysis thereunder as stated in their opinion is sound.  They referred to evidence in the record which

31

reasonably supported their factual findings, and this court's review of the record confirms that it contains support for those findings. Petitioner has not met his burden to show that the state court's decision on this claim was other than a reasonable application of the *Strickland* standard.[13]  For these reasons, the court finds no claim for federal habeas corpus relief is presented in the Petition.

**EVIDENTIARY HEARING**

"If the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Schriro* 550 U.S. at 474.  Because all of petitioner's claims and arguments have been resolved on the record, no evidentiary hearing is necessary.  *Anderson v. Attorney General of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005).

**CERTIFICATE OF APPEALABILITY**

Rule 11 of the Rules Governing Section 2254 Proceedings provides that the court must issue or deny a COA when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where

---

[13]    The state court also addressed whether petitioner could show that he would have insisted on going to trial but for counsel's alleged errors and noted that Mr. Kleiner stated on the record that he was satisfied with his attorney and the advice given concerning the plea.  This court need not address the prejudice prong having found that petitioner has not shown deficient performance.

a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); see *United States v. Bedford*, 628 F.3d 1232 (10th Cir. 2010).  When a claim is denied on procedural grounds, "the petitioner seeking a COA must show both 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Gonzalez v. Thaler*, 132 S.Ct. 641, 648 (2012)(quoting *Slack*, 529 U.S. at 484).  Petitioner has not met these standards as to any issue presented.  Accordingly, no certificate of appealability is granted.

**IT IS THEREFORE ORDERED** that this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc.1) is denied.

**IT IS SO ORDERED.**

Dated this 8th day of July, 2014, Topeka, Kansas.




**s/ Sam A. Crow**
**Sam A. Crow**
**U.S. District Senior Judge**